386 A.2d 543

**COMMONWEALTH of Pennsylvania**

v.

**Kevin Lee DAVENPORT, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 1976.

Decided April 13, 1978.

134

Charles B. Swigart, Huntingdon, for appellant.

Stewart L. Kurtz, II, District Attorney, Huntingdon, submitted a brief for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was convicted at a nonjury trial on an indictment charging in two counts that appellant had made inconsistent statements under oath in violation of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 4902(e). Post-trial motions were denied, and on the first count appellant was sentenced to costs, a $100 fine, and one to three years in prison; on the second count sentence was suspended.

The charges against appellant arose from the following events.

On February 1, 1974, a police officer stopped a speeding car with five men in it; appellant was the driver. Various items, such as loose money, ski masks, and bank bags, immediately linked the car's occupants to a bank robbery that had taken place minutes before. Two of the men fled from the car; appellant, one Grover Cleveland Posey, and a third man were arrested.

136

Appellant was tried on May 16, 1974, for bank robbery and theft. He testified that he had participated in the robbery under duress. He said three of the men had gone into the bank and that Posey had stayed at the car, pointed a gun at him, and commanded him to get into the front seat of the car and drive them all away from the scene. The jury acquitted him.

On May 23, 1974, at Posey's habeas corpus hearing (Posey was charged with the same robbery and theft) appellant again testified that Posey had pointed a gun at him and commanded him to drive.

However, on August 5, 1974, at Posey's trial, appellant testified that he did not know Posey had had a gun, and on August 6, that Posey had had no gun "that I know of," and that no one had threatened him. Appellant being the only witness who could incriminate Posey, the trial judge sustained Posey's demurrer. Lower court opinion at 12.

The provision of the Crimes Code under which appellant was indicted, 18 Pa.C.S.A. § 4902(e), reads:

Where the defendant made inconsistent statements under oath . . . the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and not believed by the defendant. In such case it shall not be necessary for the prosecution to prove which statement was false but only that one or the other was false and not believed by the defendant to be true.

–1–

Appellant argues that the indictment should have set forth the exact language of the statements said to be inconsistent. The indictment reads:

Count I: That on (or about) May 16, 1974, and August 5, and August 6, 1974, respectively, in said County of Huntingdon, Kevin Lee Davenport, the Defendant, did intentionally and knowingly make inconsistent statements under oath, each of which was made in an official proceeding, to wit, the trial by jury of a felony in the Huntingdon

County Courtroom, and each of which was made when it was material:

Statement No. 1, made by defendant as a witness on May 16, 1974, during the trial in the case of *Commonwealth v. Kevin Lee Davenport,* No. 32 Criminal Action 1974, which statement was in substance that one Grover Cleveland Posey *pointed a gun* at the defendant, Kevin Lee Davenport, at a certain time and place.

Statement No. 2, made by defendant on August 5, and August 6, 1974, during the trial in the case of *Commonwealth v. Grover Cleveland Posey,* No. 33 Criminal Action, 1974, which statement was in substance that one Grover Cleveland Posey *did not point a gun* at the defendant, Kevin Lee Davenport, at the said time and place,

and that of Statement No. 1 and Statement No. 2, one or the other was false and not believed by the defendant to be true.

Count II: That on (or about) May 23, 1974, and August 5, and August 6, 1974, respectively, in said County of Huntingdon, Kevin Lee Davenport, the Defendant, did intentionally and knowingly make inconsistent statements under oath, each of which was made in an official proceeding in the Huntingdon County Courtroom, and each of which was made when it was material:

Statement No. 1, made by defendant as a witness on May 23, 1974, during the hearing for application of a writ of habeas corpus in the case of *Commonwealth v. Grover Cleveland Posey,* No. 50 September Term, 1974, which statement was in substance that one Grover Cleveland Posey *made threats* to the defendant, Kevin Lee Davenport, *by holding a gun,* at a certain time and place.

Statement No. 2, made by defendant as a witness on August 5, 1974, and August 6, 1974, during the trial in the case of *Commonwealth v. Grover Cleveland Posey,* No. 33 Criminal Action, 1974, which statement was in substance that said Grover Cleveland Posey *did not*

*make threats* to the defendant, Kevin Lee Davenport, *by holding a gun,* at the said time and place, and that of Statement No. 1 and Statement No. 2, one or the other was false and not believed by the defendant to be true. (Emphasis supplied)

■ ·Appellant concedes that Pennsylvania law has not required an indictment to set forth the exact testimony alleged to be perjurious. *Commonwealth v. Buford,* 179 Pa.Super. 312, 116 A.2d 759 (1955) (requiring that "the language in question [be] sufficient to inform appellant of the charge which he was called upon to answer and to protect him against a second conviction for the same offense," 179 Pa.Super. at 315, 116 A.2d at 760). But appellant argues that since § 4902(e) of the Crimes Code has now relieved the Commonwealth of its former burden of proving which statement is false, the requirements for specificity in the indictment should be stiffened. Appellant also argues that a defense against inconsistent statements requires knowledge of the specific words in question, more so than a defense against other types of perjury.

■ These arguments are not persuasive. A defendant's right to notice of the charges is not linked to the ease or difficulty of the prosecution's burden of proving its case, but rather, to a basic standard of fairness. *See Commonwealth v. Little,* 455 Pa. 163, 314 A.2d 270 (1974). Here, the indictment gave the substance of the inconsistency, thereby meeting the *Buford* test. We do not see how a conviction for making inconsistent statements turns on the exact wording to any greater degree than does a conviction for perjury. As regards appellant's ability to prepare a defense, we note that the indictment was supplemented by a bill of particulars with specific passages of the transcripts marked to show the testimony in question.

–2–

Appellant next argues that his statements were in fact not inconsistent. The lower court found the statements

inconsistent insofar as they concerned whether Posey had or had not pointed a gun at appellant.

On May 16, 1974, appellant testified at his own trial:

Q. Up until the time that Mr. Posey pointed this gun at you the first time did you have any idea that there was a bank robbery going on?

A. Yes, I did as soon as he pointed the gun at me.

\* \* \* \* \* \*

Q. What was Posey doing with the gun that he had before?

A. He still had the gun on me inside the car.

Q. Was it pointed at you?

A. Yes, it was.

(Commonwealth Ex. No. 4)

On May 23, 1974, when called as a Commonwealth witness at Posey's habeas corpus hearing, appellant testified:

Q. And you said that Mr. Posey had a gun?

A. Yes, sir.

Q. Was this a pistol or a shotgun of some sort?

A. It was a pistol.

\* \* \* \* \* \*

Q. And what did he do with the pistol when he told you to drive?

A. He pointed the gun inside the car and he was standing up outside the car, he had the door open and had the gun in his hand and told me to just drive the car.

\* \* \* \* \* \*

Q. Where did he have it pointed, Kevin?

A. If it went off, I probably would have been in the way, been hit.

(Commonwealth Ex. No. 6)

On August 5, 1974, at Posey's trial, appellant testified:

Q. When these men came back from the bank or when these men came back and you saw them get into the car, Brandon and Walker, did you see Grover Cleveland Posey point anything inside the car with his hand?

A. (No reply)

Q. About that time?

A. I don't know.

(Commonwealth Ex. No. 5A)

When recalled to the witness stand on August 6, 1974, appellant testified:

Q. During the time, the same time when this defendant, Grover Cleveland Posey, was with you, did you see him have a gun?

A. Not that I know of.

(Commonwealth Ex. No. 5B) [1]

The question, therefore, is whether the statements, "I don't know" (on August 5), and "Not that I know of" (on August 6), are inconsistent with appellant's statements on May 16 and 23 that Posey pointed a gun at him.

██ Initially we must reject appellant's argument that his response "Not that I know of" (when asked if he saw Posey have a gun) was the equivalent of, "I don't know." It was not. The first phrase is the stronger. It amounts to "no" —a hedged "no," it is true, but "no" nonetheless. This was inconsistent with appellant's former testimony. Two statements are inconsistent if they are contrary the one to the other so that one implies the negation, destruction or falsity of the other. *O'Malley v. Luzerne County,* 3 Kulp 41, 46.

██ In any event, it does not help appellant if both of his statements at Posey's trial are treated as having been "I don't know." A witness must testify from personal knowledge or observation. *Semet v. Andorra Nurseries, Inc.,* 421 Pa. 484, 219 A.2d 357 (1966); *Commonwealth v. Lehman,* 309 Pa. 486, 164 A. 526 (1933). Thus, appellant's testimony at

---

1. It is unclear from the lower court's opinion whether the finding as to Count I rested solely on appellant's testimony of August 5, 1974, or on the testimony of August 6 as well. "Davenport committed perjury on August 5, 1974, insofar as the first count was concerned," Lower court opinion at 7. "Davenport knowingly lied in answering these questions [the questions to which he answered "I don't know" and "not that I know of," i. e., the questions on August 5 and August 6], or knowingly lied when he originally testified . . . ." Lower court opinion at 13. We shall consider the testimony on both days.

his trial and at Posey's habeas corpus hearing that Posey pointed a gun at him inside the car was the equivalent of his saying that he knew that Posey pointed a gun at him. This was inconsistent with his later statement (or statements) that he did not know whether "Posey point[ed] anything inside the car with his hand."

There is the possibility, however, that a response of "I don't know" really means "I forget." Appellant assumes in his brief that this is the correct meaning, although nowhere in the testimony is there any indication that appellant had once known whether Posey pointed a gun at him, but by August 5, 1974, had forgotten. Let us assume, however, that appellant did mean to say, "I forget." The trier of fact was not obliged to take such a statement at face value. Even though in a prosecution for inconsistent statements the ultimate question is not one of falsity but of inconsistency, we see no reason why the trier of fact should not be able to reach a judgment of inconsistency *via* a finding of falsity, *i. e.,* that a subsequent statement, "I don't know", is false and therefore inconsistent with a prior statement. Such a finding of falsity is well within the trier's power in a prosecution for simple perjury. In *United States v. Chapin,* 169 U.S. App.D.C. 303, 515 F.2d 1274, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975), the defendant was convicted of perjury on the basis of the jury finding that the response, "I don't recall," was false. The Court said:

Of course, in the absence of a statement by the defendant, the falsity of an "I don't recall" answer must be proven by circumstantial evidence. This does not mean that proof is impossible. As another court has stated, "The jury must infer the state of a man's mind from the things he says and does. Such an inference may come from proof of the objective falsity itself, from proof of a motive to lie, and from other facts tending to show that the defendant really knew the things he claimed not to know" or recall. 515 F.2d at 1284.

In the case at hand, there was ample basis for the lower court to find that appellant, who had been a friend of

Posey's had not forgotten, between May 23, 1974, and August 5, 1974, that Posey had pointed a gun at him.

–3–

█ Appellant next argues that before his testimony on August 6, 1974, when he was recalled to the stand, the prosecution knew he was in danger of committing perjury, and was required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to warn him that statements inconsistent with prior statements are perjurious and that he had the right to consult with an attorney and to remain silent.

Appellant concedes that a number of decisions in the federal courts have held it unnecessary to give a witness *Miranda* warnings, *e. g., United States v. DiGiovanni,* 397 F.2d 409 (7th Cir. 1968), *cert. denied,* 393 U.S. 924, 89 S.Ct. 256, 21 L.Ed.2d 260 (1968); *United States v. DiMichele,* 375 F.2d 959 (3d Cir. 1967), *cert. denied,* 389 U.S. 838, 88 S.Ct. 54, 19 L.Ed.2d 100 (1967), but he relies heavily on the decision in *United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974). In that case, a potential defendant testified before a grand jury about drug trafficking. The court of appeals held that his perjurious testimony should have been suppressed because he was a potential defendant and the government had failed to warn him of his rights. However, the Supreme Court of the United States reversed. *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Four justices held that a grand jury witness has no right to *Miranda* warnings before he testifies. Two other justices did not reach the question. The court was unanimous, however, in holding that whatever right to be warned may exist, a defendant who *perjures* himself rather than *incriminates* himself is entitled to no relief:

"[A grand jury witness] might answer truthfully and thereafter assert the constitutional guaranty. *Under no circumstances, however, could he commit perjury and successfully claim that the Constitution afforded him protection from prosecution for that crime. . . .*"

425 U.S. 570, 96 S.Ct. 1773 (plurality opinion; emphasis in original; quoting from *United States v. Orta,* 253 F.2d 312 (5th Cir. 1958)).

[Perjury is] a course that the Fifth Amendment gave him no privilege to take.

425 U.S. at 585, 96 S.Ct. 1768 (Mr. Justice BRENNAN, concurring in the judgment).

Our legal system provides methods for challenging the government's right to ask questions—lying is not one of them.

425 U.S. at 609, 96 S.Ct. 1768 (Mr. Justice STEWART, concurring in the judgment).

Here, the appellant did not have a choice between perjuring himself or incriminating himself: the crime for which he was incriminating himself *was* perjury. We nevertheless hold that appellant was not entitled to *Miranda* warnings. The concern of Justices BRENNAN and MARSHALL, who urged that potential defendants be given warnings before appearances before a grand jury, was that prosecutors would use the grand jury as a tool to evade the *Miranda* requirements, or to get information out of potential defendants prior to their indictments. Neither concern is relevant here.

It is true that both concurring opinions in *Mandujano* indicated that relief might be available for a perjurer if false answers were induced by inherently unfair governmental tactics or procedures. 425 U.S. at 585, 609, 96 S.Ct. 1768. However, we find no evidence of such tactics here. Appellant asserts that the Commonwealth put him back on the stand on August 6, hoping that he could be tricked into saying, outright, that Posey had had no gun and had not threatened him (since he had not clearly said so on August 5), and thus be guilty of making inconsistent statements. On the contrary, under the circumstances it is clear that the Commonwealth was not out to "get" appellant. He was the *only* witness who could incriminate Posey. Lower court opinion at 12. When appellant altered his story of Posey's threats, it would have done the Commonwealth no good

merely to have impeached his credibility, for having done that, the Commonwealth would still have been left with no incriminating evidence. *See Wilson v. Penna. R.R. Co.,* 421 Pa. 419, 219 A.2d 666 (1966); *Bizich v. Sears, Roebuck & Co.,* 391 Pa. 640, 139 A.2d 663 (1958); *Zavodnick v. A. Rose & Son,* 297 Pa. 86, 146 A. 455 (1929). The Commonwealth thus had no choice, in its effort to convict Posey, but to put appellant back on the stand and to hope that he would change his testimony of the day before, and say that Posey had had a gun. In making that effort the Commonwealth was not acting in a fundamentally unfair manner.

–4–

█ Appellant finally argues that the charges in Count I and Count II are so similar that they should have been merged into one. We agree.

In Count I appellant was charged with inconsistency about whether Posey pointed a gun at him. In Count II the alleged inconsistency was over whether Posey threatened him by pointing a gun at him.

The closest that appellant came to alleging that Posey had threatened him by pointing a gun at him was in the following testimony at appellant's trial on May 16, 1974:

Q. And when you crawled into the front seat and got behind the wheel, why did you do that?

A. Grover Posey was forcing me with the gun. He acted like he was forcing me with the gun, so I done what he told me to do.

Q. Well what did you feel at the time you crawled in behind the wheel, what was going through your mind?

A. They they had robbed the bank and I was scared he was going to shoot me if I didn't do what he told me to do. (Commonwealth Ex. No. 4).

At Posey's trial, on August 6, 1974, appellant testified:

Q. That night of February 1, 1974, when you were at the bank and during the time that you drove the car away from the bank until the car was stopped, did anybody make any threats at you?

A. What do you mean, what are you talking about? Threats?

Q. Yes.

A. No. (Commonwealth Ex. No. 5B).

Before the enactment of the Crimes Code, it was clear that charges of perjury rooted in a common act or transaction belonged in a single count of perjury and that charges not so rooted belonged in separate counts:

> [T]he Commonwealth contends that it is proper to set forth several assignments of perjury in the same count. This is true so long as the assignments *arise from a single act or transaction* or do not relate to separately provable matters; otherwise the indictment should be quashed. *Commonwealth v. Field,* 223 Pa.Super. 258, 265, 298 A.2d 908, 912 (1972) (emphasis supplied).

In *Field,* two assignments, "which charge essentially the same thing," 223 Pa.Super. at 262, 298 A.2d at 911, were permitted in the same count; others were not. *See also Commonwealth v. Morgan,* 174 Pa.Super. 586, 102 A.2d 194 (1954).

In dealing with § 4902(e) of the Crimes Code we must ask what actions make up the basic offense of making inconsistent statements; § 4901 defines "statement" as "any representation, but includ[ing] a representation of opinion, belief or other state of mind only if the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation."

 This leads us to the question of what constitutes a "representation." Particularly, we must ask whether appellant's testimony that Posey was forcing him with a gun was a separate "representation" from his testimony that Posey pointed a gun at him. The use of the phrase "*facts which are the subject of the representation*" (emphasis added) makes clear that the legislature had in mind that a "representation" may comprise more than one fact.[2] This

---

2. *See Model Penal Code* § 208.20, Comment (Tent. Draft No. 6, 1957) at 118:

makes sense; if a person testified that John hit Joe, and later denied it, it would seem inherently unfair to charge, as two separate counts of perjury, that the witness was inconsistent about whether it was John who hit Joe, and also inconsistent about whether it was Joe who was hit.[3]

■ Here, the essential statement in appellant's testimony was that Posey threatened him by pointing a gun at him; it described one event and in sum, presented one perjurious offense.[4] *See State v. Anderson,* 35 Utah 496, 101 P. 385 (1939), where the court upheld an information against a charge of duplicity, holding that it in fact charged only one offense:

> [T]he several assignments contained in the information consist of certain alleged successive statements made by defendant while testifying as a witness, and are so related to the one question which was the subject-matter of inquiry . . . and were so linked and blended together in point of time, as to constitute but one act or transaction, and therefore constitute but one offense. 35 Utah at 503, 101 P. at 387.

While appellant's description of the event was drawn out by a number of questions, perjury cannot be compounded by repetition of the questions. *Masinia v. United States,* 296 F.2d 871 (8th Cir. 1961); *cf. Commonwealth v. Spivey,* 243 Ky. 483, 48 S.W.2d 1076 (1932) (an acquittal of perjury based on testimony at a homicide trial is *res judicata* as to the same testimony given at a second trial of the homicide).

An intermediate course would be possible if, as we would recommend, "statement" is not construed so rigorously as to apply to individual sentences, but rather to connote any single item of information communicated in one sequence of declarations or responses to questioning.

3. It is also clear that "representation" cannot mean the response to one question. The perjuror who said it all in one breath could be convicted only once, but the less succinct perjuror, who said the same words, but in response to several questions, would receive multiple convictions.

4. This would not be true where a witness testified that X threatened him and Y threatened him; such testimony could well support two convictions of making inconsistent statements.

 We recognize that the usual procedure for resentencing where one of multiple convictions is reversed on appeal is to remand for resentencing, *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972), but we shall not remand here. The trial judge although insisting that there was a difference between the two counts in the indictment, said that "[b]ecause of the fact that the two counts were closely related, we imposed sentence on the first count and suspended sentence on the second count." Lower court opinion at 10. Under these circumstances, it is evident that the same sentence would be imposed again, so that remand would be a mere procedural exercise. *Commonwealth v. Grant,* 235 Pa.Super. 357, 341 A.2d 511 (1975).

The judgment of sentence on Count I is affirmed. The judgment of sentence on Count II is vacated.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, J., concurs but would remand the case for resentencing under *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972).

PRICE and VAN der VOORT, JJ., join as to Count I but dissent as to Count II.