452 A.2d 1355

COMMONWEALTH of Pennsylvania, Appellant,

v.

Leroy BARNES.

COMMONWEALTH of Pennsylvania

v.

Leroy BARNES, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Oct. 15, 1982.

Reargument Denied Dec. 27, 1982.

Petition for Allowance of Appeal Denied March 18, 1983.

144

Gaele McGlaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellant (at No. 2395) and appellee (at No. 2459).

Leonard Sosnov, Assistant Public Defender, Philadelphia, for Barnes, appellant (at No. 2459) and appellee (at No. 2395).

Before BROSKY, WATKINS and MONTGOMERY, JJ.

BROSKY, Judge:

Leroy Barnes, was arrested in January of 1979 and charged with false swearing in official matters[1] and perjury.[2] Barnes brought a motion to suppress certain evidence. A hearing was held on July 18 and 19 of 1979. On October

1. 18 Pa.C.S.A. § 4903.

2. 18 Pa.C.S.A. § 4902.

22, 1979, Barnes' motion to suppress was granted in part and denied in part. The Commonwealth appeals from the portion of the suppression motion which was granted[3] and Barnes filed a cross-appeal to the portion of suppression motion which was denied.[4] We reverse in part and affirm in part.

The first issue before us is whether or not defendant's appeal should be quashed.

■ The Commonwealth has the right to bring an interlocutory appeal from the granting of a motion to suppress evidence if that suppressed evidence is important to its case. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), *Commonwealth v. Warfield,* 418 Pa. 301, 211 A.2d 452 (1965). The defendant in a criminal case, on the other hand, may generally not bring an appeal from the denial of a pretrial motion to suppress until after his conviction and sentencing. *Commonwealth v. Bosurgi,* supra.

One of the self-evident policies behind this rule is the promotion of judicial economy. Should the defendant not be convicted, the validity of the denied suppression is moot.

The Pennsylvania Supreme Court has held that the latter rule prohibits the defendant appealing from a denied suppression motion even when that appeal would reach the appellate court along with the Commonwealth's interlocutory appeal. *Commonwealth v. Fisher,* 422 Pa. 134, 221 A.2d 115 (1966).

The rule in *Fisher* was not followed two years later in *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968). The opinion of the court in *Bordner,* with four Justices joining, reached the merits of the defendant's as well as the Commonwealth's appeal from pre-trial suppression rulings. The majority opinion did not make any reference to the fact

**3.** It is clear that such an appeal is properly before this court. See: *Commonwealth v. Ryan,* 296 Pa.Super. 222, 442 A.2d 739; *Commonwealth v. Monaghan,* 295 Pa.Super. 450, 441 A.2d 1318.

**4.** A cross-appeal is permitted pursuant to Pennsylvania Rules of Appellate Procedure, Rules 511 and 903(b).

that its consideration of defendant's appeal on the merits was a departure from the rule in *Fisher*. Justice Roberts filed a concurring opinion in which he disapproved of the court's willingness to treat defendant's appeal and argued that it should have been quashed.

In treating defendant's appeal on its merits, we are modeling our actions on those the Supreme Court took in *Bordner*. We think that *Bordner's* effect is to permit a criminal defendant to cross-appeal a denied suppression motion when the Commonwealth appeals a granted suppression motion.

Had Justice Roberts not drawn the court's attention to the issue, we might not be inclined to adopt the procedure used in *Bordner*. However, when viewed in light of Justice Robert's protest, the majority's silence on the issue and their reaching the defendant's appeal on its merits take on an added significance. Just as judicial economy is promoted by quashing a defendant's appeal when the Commonwealth is not also appealing; so also is judicial economy promoted by allowing the defendant to join his appeal to the Commonwealth's.[5] The same basic fact situations will often be present in both appeals and there is an undeniable saving of time and expense for both parties and the courts if the issues are not artificially separated.

There is an additional advantage of consistency of treatment to be had in permitting such cross-appeals. Results grounded in contradictory interpretations of the same facts might be obtained if one panel of this court treated the interlocutory appeal of the Commonwealth and another panel handled the post-conviction appeal of the defendant. Consistency among different cases is always desirable in the law; but inconsistency in the handling of the same case is particularly unfortunate and to be avoided.

In this opinion we will, therefore, reach the issues of defendant's appeal.

5. Such an interlocutory appeal by the defendant is permissive, not mandatory; and no prejudice to the defendant will result if he should choose to postpone his appeal until, and if, he is convicted.

The Commonwealth presents the following questions on appeal: Was Barnes' perjurious testimony at a 1979 court proceeding properly suppressed? And, was evidence which flowed from Barnes' prior arrest for murder, even if illegally obtained, admissible to prove he subsequently committed perjury or false swearing? Barnes remonstrates in his cross-appeal that statements he made following his illegal arrest for murder should have been suppressed as well as testimony given during judicial proceedings on the murder charge because those statements were both tainted and were not obtained by methods free of compulsion.

The evidence sought to be suppressed has its origin in the proceedings which followed the arrest and charge of Barnes and Henry Gaddy and Nathanial Odom for their involvement in the robbery and homicide of Martin Dobkin. Barnes agreed to testify against his codefendants after the district attorney indicated he would nolle pros the murder charge and recommend the case be disposed of in Juvenile Court. Barnes so testified. Odom and Gaddy were convicted and Barnes was ordered by Juvenile Court to spend 15 months in a secure facility for his involvement in the homicide. Sometime later, Gaddy sought relief under the Post Conviction Hearing Act. 19 P.S. § 1180–1 et seq. At his P.C.H.A. hearing, Barnes testified that he had lied earlier and that he knew nothing about the Dobkin murder. Barnes was subsequently charged with perjury and false swearing.

After a preliminary hearing was held on the new charges filed against Barnes, a suppression hearing was held. Motions were filed challenging the admissibility of statements Barnes gave to the police immediately following his arrest for the Dobkin murder, a gun seized from Odom's residence pursuant to a search warrant obtained pursuant to the evidence given by Barnes earlier, statements Barnes gave to the prosecution after Barnes agreed to testify against Odom and Gaddy, all of his testimony given against Odom and Gaddy and his testimony given at Gaddy's P.C.H.A. hearing. Barnes claims all the evidence is tainted fruit of the illegal

arrest. See *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). All the evidence was suppressed except for the testimony given at the trial of Odom and Gaddy.

Perjury is defined in language found at 18 Pa.C.S.A. 4902(a) which states:

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

See: *Commonwealth v. Lobel*, 294 Pa.Super. 550, 440 A.2d 602 (1982).

False swearing in official matters is defined in 18 Pa.C.S.A. § 4903 as:

A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true is guilty of a misdemeanor of the second degree if:

(1) the falsification occurs in an official proceeding; or

(2) the falsification is intended to mislead a public servant in performing his official function.

The Commonwealth argues that this decision is controlled by *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), and *Commonwealth v. Davenport*, 255 Pa.Super. 131, 386 A.2d 543 (1978).

In *Commonwealth v. Davenport*, supra, 255 Pa.Superior Ct. at 142, 386 A.2d at 584, we interpreted *United States v. Mandujano*, supra in stating:

The court was unanimous, however, in holding that whatever right to be warned may exist, a defendant who perjures himself rather than incriminates himself is entitled to no relief:

"[A grand jury witness] might answer truthfully and thereafter assert the constitutional guaranty. *Under no circumstances, however, could he commit perjury and*

*successfully claim that the constitution afforded him protection for that crime. . . ."*
425 U.S. [at] 570, 96 S.Ct. [at] 1773 (plurality opinions, emphasis in original; quoting from *United States v. Orta,* 253 F.2d 312 (5th Cir.1958)

[Perjury is] a course that the Fifth Amendment gave him no privilege to take. 425 U.S. at 585, 96 S.Ct. [at] 1768 (Mr. Justice BRENNAN, concurring in the judgment.) Our legal system provides methods for challenging the government's right to ask questions—lying is not one of them.
425 U.S. at 609, 96 S.Ct. [at] 1768 (Mr. Justice STEWART, concurring in the judgment)

. . . . .

It is true that both concurring opinions in *Mandujano* indicate that relief might be available for a perjurer if false answers were induced by inherently unfair governmental tactics or procedures. 425 U.S. at 585, 609, 96 S.Ct. [at] 1768.

Thus, our concern essentially becomes whether the perjured testimony was obtained through inherently unfair government tactics if, as Barnes asserts, the evidence was all tainted by an illegal arrest.

In *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972), our Supreme Court discussed the purposes envisioned by Pennsylvania Rule of Criminal Procedure 323, which concerns the suppression of evidence, and which states in relevant part:

(g) A record shall be made of all evidence adduced at the hearing. The clerk shall impound the record and the nature and the purpose of the hearing and the order disposing of the motion shall not be disclosed by anyone to anyone except to the defendant and counsel for the parties. The record shall remain thus impounded unless the interests of justice require its disclosure.

The court said:

The purpose of section (g) of Rule 323 is to protect a defendant's Fifth Amendment privilege against self-in-

crimination. It is felt that an individual who seeking to suppress evidence has the fullest opportunity to testify at the hearing when he knows that his testimony will not be disclosed. However, this privilege against self-incrimination cannot be construed to include the right to testify at a suppression hearing with complete impunity and at trial to testify in a contrary manner. In order to prevent this type of occurrence Rule 323(g) expressly recognizes that it may be necessary to disclose portions of the record of the prior suppression hearing when "the interests of justice" so require. It appears clear that whenever a defendant's credibility is an issue it is in "the interests of justice" to show that he had testified in a completely contrary manner of an earlier hearing in the same case. To decide otherwise would be tantamount to the condoning of perjury.

Id., 448 Pa. at 173–174, 292 A.2d at 371. Accordingly, our Supreme Court has held on several occasions that it is not error for the prosecution to cross-examine a defendant at trial, addressing the court's attention to wholly contradictory statements made by the defendant at a suppression hearing. See: *Commonwealth v. Kennedy,* 271 Pa.Super. 206, 412 A.2d 886 (1980); *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Ravenell,* supra.

It follows then that our Supreme Court would not find it inherently unfair for the government to seek to convict a defendant of perjury who has contradicted statements given by him at a suppression hearing in testimony at trial. The fact that the evidence is suppressed or not would seem to be irrelevant where a defendant wholly contradicts himself. To decide otherwise would permit a defendant to perjure himself in precisely the manner in which the court in *Commonwealth v. Ravenell,* supra, sought to prevent.

 Our situation while not precisely the same is analogous. Here, Barnes testified in 1972 at the trials of Gaddy and Odom. He testified after he was given his 5th Amend-

ment rights on two occasions.[6] Clearly, if he wished to state that Odom and Gaddy had nothing to do with the murder he could have done so. He also could have elected to say nothing and asserted his 5th Amendment rights. There is no indication that Barnes sought to assert his 5th Amendment rights and for that matter the prosecution took no action to compel him to answer in contravention of those rights. See *In Re Brogna,* 589 F.2d 24 (1st Cir.1978).[7] Barnes chose to incriminate himself and Gaddy and Odom. Barnes has paid his penalty for that crime. Nevertheless, he may not now simply retract his earlier statements and not commit perjury. We hold that, even if the evidence was suppressible, that such evidence is admissible to prove Barnes has committed perjury and false swearing. Essentially, if a person is duly sworn to testify and does so, where he has been advised that he cannot testify falsely, see: *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); *Leary v. United States,* 544 F.2d 1266 (5th Cir.1977), the oath itself is sufficient to put a witness on notice of his obligation to testify truthfully. *United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977). *Commonwealth v. Good,* 461 Pa. 546, 337 A.2d 288 (1975). Barnes was free to not incriminate and then pursue his claim that the evidence against him was suppressible when he was brought to trial. He chose not to follow this path. We find no purpose in permitting him to do so now other

6. Barnes was also represented at all times by counsel. Federal Circuit Courts have held that *complete* denial of counsel is not bar to a subsequent perjury prosecution. *United States v. Dipp,* 581 F.2d 1323 (9th Cir.1978); *United States v. Masters,* 484 F.2d 1251 (10th Cir.1973); *United States v. Winters,* 348 F.2d 204 (2nd Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). Clearly, denial of counsel does not rise to an inherently unfair governmental act.

7. There is no evidence whatsoever that the prosecution used the testimony given by Barnes against Odom and Gaddy to indict Barnes on criminal charges. Barnes testified in exchange for having the murder charge brought against him nol prossed and having the proceedings against him pursued by the Commonwealth in juvenile court. See: *United States v. McInnis,* 601 F.2d 1319 (5th Cir.1979); *United States v. Phillips,* 540 F.2d 319 (8th Cir.1976); *United States v. DeRosa,* 438 F.Supp. 548 (D.Mass., 1977).

than to sanction the commission of perjury.[8] We are satisfied that both the word and spirit of *United States v. Mandujano,* supra, and *United States v. Wong,* supra, require this result.[9]

The order of the lower court is reversed insofar as it suppressed certain evidence and is affirmed insofar as it did not suppress certain evidence.

**8.** We are unable to see how we would deter police from misconduct by suppressing evidence which Barnes supplied the court under oath. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 61 L.Ed.2d 1081 (1961).

**9.** The Commonwealth contends that the evidence cannot be suppressed because Barnes has waived any opportunity to so move. Our decision does not require that we discuss the waiver issue.