IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Coley,                          :
             Petitioner          :
                                 :
          v.                 : No. 2058 C.D. 2016
                              : Submitted:  April 6, 2018
Workers' Compensation Appeal          :
Board (Illusionz of Greenville,       :
LLC and Uninsured Employers'          :
Guarantee Fund),                      :
             Respondents         :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI         FILED: May 3, 2018


      Eric Coley (Claimant) petitions for review of the Workers' Compensation Appeal Board's (Board) order that reversed the Workers' Compensation Judge's (WCJ) decision granting benefits to Claimant pursuant to Section 301(a) of the Workers' Compensation Act (Act)[1] because his injuries occurred as a result of his intoxication.[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 431.  Section 301(a) of the Act provides, in pertinent part, "In cases where the injury or death is caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer."  77 P.S. § 431.

[2] Claimant also appealed to the Board, contending that:  (1) there was no credible evidence that he was intoxicated; (2) his conduct did not give rise to the confrontation; (3) he **(Footnote continued on next page…)**

## I.

Claimant was employed by Illusionz of Greenville, LLC (Employer) as a club disk jockey (DJ). On April 19, 2013, he filed a claim petition alleging that on March 16, 2013, he suffered work-related injuries in the nature of a broken right ankle and broken right fibula as the result of a slip and fall following a disagreement with a fellow employee. Claimant sought workers' compensation benefits beginning March 16, 2013, as well as the payment of medical expenses resulting from the incident. Because Employer did not have workers' compensation insurance in effect on the date of injury, the Uninsured Employers' Guarantee Fund (Fund) filed an Answer denying all material averments and alleging that Claimant was precluded from receiving benefits because his injuries were the result of his intoxication.

## A.

Before the WCJ, Claimant testified that he worked for Employer as a DJ Wednesdays through Fridays from 10:00 p.m. until 2:00 a.m. and that his duties were maintaining the computer, playing music, and cleaning at the end of the night. Although only paid until 2:00 a.m., Claimant was required to clean the club at the end of the night with other staff. This took between one-half hour and one-hour-and-a-half.

---

**(continued…)**

was not able to return to full duty as of July 23, 2013; and (4) he was entitled to unreasonable contest fees. The Board dismissed Claimant's appeal as untimely and Claimant does not challenge that determination on appeal to this Court.

Claimant testified that on March 16, 2013, between 2:30 a.m. and 3:00 a.m., he complained to both Employer's owner and manager that the bouncers were not cleaning properly. That led to a verbal and physical altercation with one of the bouncers, who pushed him twice. While attempting to turn and walk away from the bouncer, Claimant stated that he slipped and fell on the wet dance floor resulting in his broken right ankle and broken right fibula, for which he was taken to the hospital by ambulance. Claimant was certain that the dance floor was wet because he had mopped it.

Regarding his alleged intoxication, Claimant testified that over his four-hour shift, he had three to four "Jack and Cokes," each of which had one shot of Jack Daniels in a 16-ounce glass with no ice. He denied that he was intoxicated when he was injured.

The records from the ambulance service indicate that Claimant "was involved in an altercation with another bouncer at the establishment. During the altercation, [he] fell and twisted his right ankle. . . . [Claimant] admitted to consuming five to six 'Jack in Cokes' prior to the event." (Certified Record (C.R.) Item No. 43, C-8-2 Itemized Records of Life Force.) The trip sheet further indicates, "[Claimant] was alert and oriented, [he] was intoxicated however he still was sound [of] mind and answered all questions appropriately." (*Id.*)

UPMC Horizon Emergency Room records indicate under the heading "context" that Claimant had a fall and a twist "[w]hile in a bar fight." (C.R. Item

No. 28, C-09 Medical records of UPMC-Horizon.) Under "Clinical Impression," it states "ETOH Intoxication." (*Id.*)

The transcript from the 911 call that was admitted into evidence states that the incident took place because of a bar fight and all parties had been drinking. A deposition was taken of Officer Wesley P. Carson (Officer Carson), who testified that he and the other responding officers on the scene were told by staff that Claimant became enraged and was heavily drinking. When confronted by the officers, Claimant would not make a statement.

Claimant also offered the deposition transcript of Stuart D. Anderson, M.D. (Dr. Anderson). As pertinent, Dr. Anderson testified that Claimant suffered a fracture/dislocation of his right ankle as well as his proximal fibula. He opined that within a reasonable degree of medical certainty, Claimant's injuries were caused by "[t]he altercation while he was at work." (C.R. Item No. 37, C-18 Deposition Testimony of Stuart Anderson, M.D. at 11.)

**B.**

Employer presented the testimony of Shawn Knauf (Knauf), who testified that he is the sole owner, operator and president of Employer and that on March 16, 2013, Employer employed two bouncers, a DJ, and three bartenders at the bar. While Claimant was permitted to leave at 2:00 a.m., Knauf claimed that Claimant remained at the site because he was waiting for his girlfriend to finish her shift and cleaning.

As to the verbal and physical altercation between Claimant and the bouncer, Knauf stated that took place when Claimant came out from the DJ booth yelling about the bouncers not doing their jobs, after which one of the bouncers confronted him. Knauf stated that Claimant was highly intoxicated, very belligerent and vulgar, yelling and screaming and swearing at everyone, and stating that the bouncers were not doing their jobs.

Knauf stated that he saw Claimant start drinking heavily over the course of several months before the incident and that he had witnessed the bartenders pouring double shots for Claimant that night so that Claimant's drinks were about two-and-one-half shots in a 16-ounce glass. Notwithstanding, he did not suspect that Claimant was overly intoxicated on the night of the incident until he began screaming, yelling and acting belligerently.

Knauf further testified that he saw Claimant and the bouncer lock up and saw Claimant going to the floor with the bouncer almost landing on top of him. He denied that the dance floor was wet because nobody had started cleaning yet. Knauf discharged Claimant and the bouncer that evening.

Kaitlyn Frederick (Frederick), a bartender who was dating Claimant at the time of the incident, testified that she was behind the bar cleaning when she heard a verbal exchange between Claimant and the bouncer, but she did not see how Claimant was injured. She stated that, to her knowledge, there had not been any issues during the evening between Claimant and the bouncer and there were no issues between them on any other occasion. Regarding Claimant's intoxication,

5

Frederick testified that she served Claimant two "Jack and Cokes" on the night of the injury, with one shot of Jack Daniels in each. She explained that bartenders and bouncers are not allowed to consume alcohol while working, but that the DJ – *i.e.*, Claimant – was allowed to do so and he normally had about three to four drinks a night. Based on her observations, Frederick testified that neither Claimant nor the bouncer was intoxicated.

Jessica Ohl (Ohl), a bartender for Employer, testified that she had known Claimant for about two years. She stated that Claimant is normally a quiet person but gets belligerent every time he gets intoxicated. She testified that on the night in question, she saw Claimant at the bar three times getting double "Jack and Cokes" from Jessica Peterson (Peterson), another bartender, but acknowledged that she did not see Claimant consume the drinks. Ohl stated that those drinks had two shots of Jack Daniels, but the staff usually top the drinks so each drink would probably contain about three shots. She testified that she observed the verbal and physical altercation between Claimant and the bouncer. The two were grabbing and pushing each other and they fell to the ground, but no punches were thrown. Claimant was already saying his ankle was hurt before falling to the floor, and once he did, the bouncer fell on top of him. Ohl stated that the dance floor could not have been wet at the time of the incident because mopping could not have been done yet. She also did not see Claimant mopping the floor at any time during the night.

Peterson testified that she was Employer's manager and helped with bookkeeping, but was working as a bartender on March 16, 2013. She testified

6

that on the night in question, she served Claimant one to two "Jack and Cokes" consisting of one to one-and-a-half shots of Jack Daniels in a 16-ounce glass. Peterson testified that Claimant did not like the taste of the alcohol and requested a new drink, a bigger glass, or that the drink be split into two cups if the staff over-poured his drinks. She stated that he normally did not get ice in his drinks. She also saw Frederick serve drinks to Claimant, but could not recall how many.

Peterson did not observe any prior difficulties between Claimant and the bouncer. She stated, at first, that Claimant was just yelling in general that the bouncers were not doing their duties but that soon thereafter, Claimant and the bouncer got into a verbal and physical altercation. Peterson did not see anything after that point.

A Pennsylvania Liquor Control Board Incident Document Form signed by Peterson states that Claimant and the bouncer "started to argue . . . [and] proceeded to fight after hours. [The bouncer] then carried [Claimant] . . . where [Claimant] fell and broke his ankle." (C.R. Item No. 41.)

## II.

On August 3, 2015, the WCJ issued a Decision and Order granting Claimant's petition. In his findings of fact, made in narrative form, the WCJ found as follows:

> As reviewed above, the essence of the developments giving rise to this claim is fairly straightforward. The [C]laimant . . . in the early morning hours of March 16, 2013, became involved in an argument with a co-worker

7

which escalated into a physical confrontation, during the course of which he sustained the injuries described by him and reviewed in the medical evidence of record. Much of what occurred is essentially undisputed by any of the witnesses who have testified throughout the course of this litigation. . . . **The credible testimony – that which has been accepted – supports a determination that [Claimant's] conduct gave rise to the resulting confrontation, and that he was significantly intoxicated at the time of this development.** All of the testimony and evidence supportive of this determination has been deemed credible, and accepted, and any testimony or evidence adverse thereto has been deemed less credible, and dismissed as such. The question then becomes: **if he started the fight, and was significantly intoxicated at the time he did so**, how could his Claim Petition possibly be granted? The answer follows.

* * *

The [E]mployer knowingly, and willingly, provided the fuel which ignited the blaze – and now wishes to disavow itself of legal responsibility for the resulting inferno. This is precisely why virtually all employers discourage – if not strictly prohibit – the consumption of intoxicants while an employee is "on duty," or on the job. The law holds a commercial liquor licensee responsible for the harmful conduct of intoxicated patrons it has served, and must likewise hold it responsible for the harmful conduct of intoxicated employees which it has served, as well. Conversely, the [E]mployer, through counsel, has argued that the [C]laimant became excessively intoxicated of his own volition – and started a fight. True enough. And hardly a novel occurrence in the annals of youthful conduct. **But the proximate cause – the legally sufficient cause, if you will, was that of the [E]mployer in allowing for what could hardly have been a wholly unexpected development given its provision of intoxicating beverages to the [C]laimant throughout the course of the evening.**

8

(C.R. Item No. 5, Decision of Judge Benedict at 10-11 (emphasis added).)

The Fund appealed to the Board, which reversed the WCJ. It found that while Employer permitted Claimant to drink at work, there was no exception to Section 301(a)'s mandate that no compensation shall be paid if the injury would not have occurred but for the employee's intoxication. Claimant then filed this petition for review.[3]

## III.

Not disputing the Board's interpretation of Section 301(a) of the Act, Claimant contends that the Fund did not meet its burden of establishing that his injuries were the result of his intoxication.[4] He contends that the WCJ only found his alleged intoxication to be the cause of the fight, not the cause of his injuries, because the WCJ made no specific finding that his injuries would not have occurred "but for" his purported intoxication.

---

[3] Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227 (Pa. Cmwlth. 2008). Credibility determinations are within the exclusive province of the WCJ and findings of fact may only be overturned if they are arbitrary or capricious. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995).

[4] Claimant also contends that the Fund lacks standing in this matter. However, that contention is waived because Claimant failed to raise the issue before the WCJ and the Board. *See Mearion v. Workers' Compensation Appeal Board (Franklin Smelting & Refining Company)*, 703 A.2d 1080 (Pa. Cmwlth. 1997).

The issue of whether a claimant is precluded from receiving compensation due to his intoxication must be raised by an employer as an affirmative defense. *Mahon v. Workers' Compensation Appeal Board (Expert Window Cleaning & State Workers' Insurance Fund)*, 835 A.2d 420, 428-29 (Pa. Cmwlth. 2003). To meet this burden, an employer must prove that the employee was intoxicated, and "that intoxication was the cause in fact of an injury . . . meaning that the harmful result would not have come about but for the negligent conduct." *Thomas Lindstrom Co., Inc. v. Workers' Compensation Appeal Board (Braun)*, 992 A.2d 961, 967 (Pa. Cmwlth. 2010) (citations omitted). It is the employer's "sole burden [] to convince the fact finder, by competent and substantial evidence that Claimant would not have fallen and sustained his injuries had he not been intoxicated." *Mahon*, 835 A.2d at 429.

> [W]e have repeatedly held that when delivering a causation opinion in a workers' compensation case, a doctor or medical expert is not required to use magic words such as "substantial contributing factor," "materially contributed," or in this case, "cause in fact." *Yanish v. Workers' Compensation Appeal Board (Bethlehem Mines Corp.)*, [] 507 A.2d 1302, 1303 ([Pa. Cmwlth.] 1986) (citing *Workmen's Compensation Appeal Board v. Bowen*, [] 364 A.2d 1387 ([Pa. Cmwlth.] 1976)). Rather, "[i]t is only necessary that the doctor's testimony permit a valid inference that such causation was present." *Yanish*, 507 A.2d at 1303-04. We certainly did not intend to require the use of "magic words" when issuing our opinion in *Mahon*, as we stated that an employer's "sole burden was to convince the fact finder, by competent and substantial evidence that [c]laimant would not have fallen and sustained his injuries had he not been intoxicated." *Mahon*, 835 A.2d at 429. We made it clear that it was up to the fact finder to infer from the evidence as a whole whether a claimant's intoxication caused his injury.

*Thomas Lindstrom Co., Inc.*, 992 A.2d at 967. The test is two-fold then: the employer must establish that the claimant was intoxicated, and "but for" that intoxication, the claimant would have not sustained his or her injuries.

Because "intoxication" is not defined in the Act, we must construe the word according to its "common and approved usage." 1 Pa. C.S. § 1903. Although not in the context of Section 301(a) of the Act, our Supreme Court has interpreted the word "intoxication" to be:

> a non-technical word which Webster's Dictionary (unabridged 2nd ed. 1976) defines as "*a making or becoming drunk.*" "Drunk" is defined by Webster's Dictionary as "overwhelmed or overpowered by alcoholic liquor to the point of losing control over one's faculties." [] Drinking and intoxication are not synonymous terms; therefore a jury instruction on intoxication is not warranted because evidence of drinking is introduced at trial. It is the intention of the legislature that a defendant **be overwhelmed or overpowered by alcoholic liquor to the point of losing his or her faculties or sensibilities** before an intoxication instruction be given.

*Commonwealth v. Reiff*, 413 A.2d 672, 674 (Pa. 1980) (emphasis added).

To make out the first prong, the employer must supply evidence demonstrating that the claimant was "overwhelmed or overpowered by alcoholic liquor to the point of losing his or her faculties or sensibilities . . . ." *Id.* Absent a blood or breath test, an employer can establish a claimant's intoxication by offering lay testimony as to the claimant's actions and behavior, his or her physical

11

appearance, and other markers, such as slurred speech, that exhibit intoxication.[5] Generally, the weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience and common sense. *See, e.g.*, *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

In this case, while the WCJ found that Claimant caused the confrontation, he made no findings on how he arrived at his determination that Claimant was "intoxicated" other than the fact that he was drinking and got in a fight. While there was testimony that Claimant had three or four drinks over the course of four hours, there was conflicting testimony of how much alcohol was in each of those drinks, as well as conflicting testimony and evidence as to the effect of his alcohol consumption. The testimony and evidence also establish that up until the point of Claimant's outburst and resulting "bar fight," no one suspected that Claimant was intoxicated. Again, even the ambulance service noted that "[Claimant] was **alert and oriented**, [he] was intoxicated however he still was

---

[5] As our Superior Court has noted in other contexts:

> Intoxication is a matter of common knowledge, and opinions given by lay people are permissible on the issue. [*Commonwealth v. Reynolds*, 389 A.2d 1113 (Pa. Super. 1978).] However, the lay witness must have sufficient facts on which to base his opinion before he can express an opinion on another's intoxication. [*Commonwealth v. Hughes*, 389 A.2d 1081 (Pa. 1978). *See also Commonwealth v. Summers*, 410 A.2d 336 (Pa. Super. 1979)] (court concludes witness' observations of the way the person looked and the way he was walking provided sufficient factual basis for witness to conclude a person was intoxicated). The court also looks to the witness' personal knowledge and observation. [*Commonwealth v. Davenport*, 386 A.2d 543 (Pa. Super. 1978).]

*Commonwealth v. Womack*, 453 A.2d 642, 648 (Pa. Super. 1982).

12

**sound [of] mind and answered all questions appropriately**." (C.R. Item No. 43, C-8-2 Itemized Records of Life Force (emphasis added).)

As to the second prong, even if Claimant was intoxicated, the WCJ made no findings as to whether his intoxication was the but-for cause of his injuries. As the various testimonies demonstrate, there is a clear conflict as to why or how Claimant fell. Claimant states that he slipped and fell on a wet dance floor while trying to avoid an altercation. Knauf and Ohl, however, state that the dance floor was not wet and that he fell as a result of the bar fight. There is also conflicting testimony as to whether Claimant's injury occurred before he fell, whether he fell alone or with the bouncer, or whether he fell after being carried by the bouncer. Given such conflicting testimony, the WCJ had to explain how he arrived at his conclusion that "but for" Claimant's intoxication he would not have been injured.

Accordingly, for the foregoing reasons, we vacate the Board's order and remand this matter to the Board.

_____
DAN PELLEGRINI, Senior Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Coley,                            :
                    Petitioner         :
                                       :
            v.                         : No. 2058 C.D. 2016
                                       :
Workers' Compensation Appeal           :
Board (Illusionz of Greenville,        :
LLC and Uninsured Employers'           :
Guarantee Fund),                       :
                    Respondents        :

# **O R D E R**

AND NOW, this 3<u>rd</u> day of <u>May</u>, 2018, the order of the Workers' Compensation Appeal Board (Board) is vacated, and this matter is remanded to the Board for proceedings consistent with this opinion.

Jurisdiction relinquished.


_____
DAN PELLEGRINI, Senior Judge