

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-2005

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 04-2807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Williams" (2005). *2005 Decisions.* Paper 778.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/778

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-2807 & 04-2903

———

UNITED STATES

<u>Appellant</u> in No. 04-2807

v.

EUGENE IVOR WILLIAMS

———

UNITED STATES

v.

EUGENE IVOR WILLIAMS

<u>Appellant</u> in No. 04-2903

———

On Appeal from the District Court of the Virgin Islands
(D.C. No. 04-cr-00016)
District Judge: Honorable Chief Judge Raymond L. Finch

———

Argued December 14, 2004

Before: SLOVITER, FUENTES, and GREENBERG,
<u>Circuit Judges</u>.

(Filed: July 1, 2005)

Anthony J. Jenkins

-1-

Acting United States Attorney

Denise A. Hinds
Assistant United States Attorney
District of the Virgin Islands

Elizabeth D. Collery (ARGUED)
Appellate Section, Criminal Division
U.S. Department of Justice
P.O. Box 899, Ben Franklin Station
Washington, DC 20044-0899

ATTORNEYS FOR APPELLANT

Pamela Lynn Colon (ARGUED)
Law Offices of Pamela Lynn Colon, LLC
36 C Strand Street, Third Floor
Christiansted, U.S.V.I. 00820

ATTORNEY FOR APPELLEE

_____

OPINION OF THE COURT

_____


FUENTES, Circuit Judge.

This appeal arises out of two separate events involving Eugene I. Williams, twice arrested by the Virgin Islands Police Department on the island of St. Croix for offenses involving firearms and drugs. In the first event, several police officers approached a parked van with the rear doors open and found Williams inside bagging marijuana. The officers, upon seeing a leafy green substance, proceeded to stop, search, and arrest Williams. The District Court granted Williams' motion to suppress evidence seized in connection with this arrest on the grounds that the police lacked reasonable suspicion to approach the van. In the second incident, Williams, who was standing on a street with a group of people, fled when he saw a police cruiser approach.

During the ensuing chase, Williams threw away a loaded firearm and was later found hiding in the bathroom of a stranger's house with marijuana in a nearby bathtub. The District Court denied Williams' motion to suppress with regards to the second arrest, finding that his flight created reasonable suspicion for the police to pursue and that, in any event, Williams lost any expectation of privacy in the firearm and marijuana once he discarded them.

The United States filed an interlocutory appeal with regards to the suppression order relating to the first arrest, while Williams filed an interlocutory cross-appeal with regards to the denial of his motion relating to the second arrest. Because we find that the police did not need reasonable suspicion to approach the parked van in which Williams was bagging marijuana, we will reverse the District Court's suppression order. However, with regards to Williams' cross-appeal, we conclude that we lack jurisdiction over his interlocutory appeal and accordingly will dismiss it.

## I.

On May 27, 2004, a Grand Jury sitting in the District of the Virgin Islands, Division of St. Croix, returned a five-count superseding indictment charging Williams with the knowing possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); unauthorized possession of a firearm in violation of V.I. Code Ann. Tit. 14, § 2253(a) (2004); possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and unauthorized possession of a firearm with an obliterated serial number in violation of V.I. Code Ann. Tit. 23, § 481. The indictment stemmed from two separate arrests of Williams for criminal conduct, the first occurring on August 27, 2003 (the "First Arrest"), and the second on January 29, 2004 (the "Second Arrest").[1]

---

[1]The following description of the First and Second Arrests is taken from testimony provided at a hearing before the District Court on June 3, 2004, as well as from the facts found by the

## A. First Arrest

On the afternoon of August 27, 2003, Officer Uston Cornelius of the Virgin Islands Police Department and three other officers were on routine patrol in a marked police cruiser in an area of St. Croix known as the Castle Coakley residential area. They came upon a parked blue van, with its rears doors open, such that the officers could see straight into the vehicle. As the officers approached the van, they observed an individual (later identified as Defendant Williams) seated in the rear of the van engaged in some sort of activity. The officers stopped their car, exited, and approached the van. Officer Cornelius later testified that he had no suspicion that criminal activity was taking place when he began his approach toward the van.

From a distance of about twelve or thirteen feet, Officer Cornelius saw Williams holding a large ziplock bag containing a green leafy substance that appeared to be marijuana and several smaller ziplock bags in his lap containing the same green leafy substance. When Williams noticed the officers approaching, he attempted to discard all the bags in his lap and hands. Williams was removed from the van, searched and handcuffed. A search of the van revealed the larger bag and fourteen smaller bags. The green leafy substance field-tested positive for marijuana. After receiving <u>Miranda</u> warnings at the station house, Williams acknowledged responsibility for four of the bags in the van but denied ownership of the remaining bags.

## B. Second Arrest

During the evening of January 29, 2004, Officer Franchet Hodge and his partners were on patrol in the Estate Profit area of St. Croix, a high crime area, in a marked police car. As Officer Hodge approached a group of individuals standing on a street corner, an individual later identified as Williams left the group and started off running down the street. Upon seeing Williams run, Officer Hodge exited his vehicle and gave chase. During the

District Court and set forth in its suppression order.

pursuit, Officer Hodge ordered Williams to stop, but Williams refused. Officer Hodge also saw Williams pause and take an unidentifiable object from his right side and throw it over a fence.

Williams then continued running and entered into a nearby house. Officer Hodge's two partners, still in the car, pursued Williams to the house where they received permission from the owner of the house to search the premises. The officers found Williams hiding in the bathroom. The owner of the house indicated that he did not know Williams and had not given him permission to enter his residence. Williams was ordered out of the bathroom. The officers then conducted a pat down search and discovered that Williams was wearing a bulletproof vest. The officers also found eight bags of marijuana in the bathtub of the bathroom where Williams had been hiding. Officer Hodge went back to the vicinity where he had seen Williams throw the unidentified object and discovered a chrome handgun with six live rounds of ammunition in the magazine and one in the chamber. Williams was arrested.

### C. Suppression Order

Following his arrest, Williams moved to suppress all physical evidence obtained and any statements made in connection with both arrests on the grounds that the evidence was seized through illegal warrantless searches and seizures. A hearing was held before the District Court on June 3, 2004, in which Officers Cornelius and Hodges testified regarding the two arrests described above. The District Court issued its order in a Memorandum Opinion dated June 7, 2004, in which the court granted in part, and denied in part, the motion to suppress.

With regards to the Second Arrest, the District Court denied the suppression motion on the grounds that Officer Hodge had reasonable suspicion to pursue Williams because Williams had fled in a high crime area upon the sight of police. The District Court also found that Williams was not seized for purposes of the Fourth Amendment because he had fled and never submitted to police authority. Moreover, the firearm and ammunition which were found near the fence, and the marijuana found in the bathtub, were

all abandoned by Williams, and thus he no longer had an expectation of privacy in these items.

However, the District Court granted the suppression motion with respect to the First Arrest. In particular, the District Court concluded that because the police lacked reasonable suspicion that criminal activity was afoot when they saw the parked van, they had no justification to approach the van, and consequently their approach did not constitute a lawful stop under Adams v. Williams, 407 U.S. 143 (1972). Accordingly, all items seized in connection with the arrest, and all confessions made thereafter, were suppressed as fruits of the unlawful seizure.

The United States now appeals from the District Court's suppression order relating to the First Arrest. Williams has filed a cross-appeal from the District Court's denial of his motion to suppress in connection with the Second Arrest.[2]

## II.

We review de novo the District Court's determination of reasonable suspicion and probable cause, as well as its determination regarding whether Williams was seized for purposes of the Fourth Amendment. See Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v. Coggins, 986 F.2d 651, 654 (3d Cir. 1993). In our de novo review, however, we accept findings of fact made by the District Court unless clearly erroneous. See Ornelas, 517 U.S. at 699; Coggins, 986 F.2d at 654. We will first consider the United States' appeal, followed by Williams' cross-appeal.

_____

[2]This Court has jurisdiction over a district court's grant of a motion to suppress evidence pursuant to 18 U.S.C. § 3731 (permitting the United States to bring an interlocutory appeal). As discussed below, this Court, however, lacks jurisdiction to hear an interlocutory appeal of an order denying a motion to suppress evidence. See United States v. Johnson, 690 F.2d 60, 62 (3d Cir. 1982) (citations omitted).

-6-

_____A.    First Arrest

The Fourth Amendment to the U.S. Constitution protects individuals from "unreasonable searches and seizures."  U.S. Const. amend IV.  Generally, subject only to a few well-defined exceptions, warrantless searches and seizures are per se unreasonable under the Fourth Amendment.  See United States v. Ross, 456 U.S. 798, 824-25 (1982) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  However, under Terry v. Ohio, 392 U.S. 1 (1968), and subsequent cases, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).[3]  In this case, the District Court concluded that, because the police had no suspicion that the individual in the parked van was engaged in any unlawful activity, their approach of the van was an impermissible stop in violation of the Fourth Amendment.  The United States, however, argues that the police did not need reasonable suspicion because, merely by approaching the parked van, they did not "stop" or "seize" Williams for purposes of the Fourth Amendment.

Thus, the central issue on appeal relating to the First Arrest is whether Williams was seized within the meaning of the Fourth Amendment when the police, who admitted they had no suspicion that the individual in the parked van was engaged in any unlawful activity, approached the van.  If Williams was "seized" by the police when they approached the parked van without probable cause or reasonable suspicion to do so, then the District Court correctly suppressed all evidence obtained in connection with the ensuing arrest under the "fruits of the poisonous tree" doctrine. See Wong Sun v. United States, 371 U.S. 471, 484 (1963). However, if Williams was not "seized," then the police could approach the van without any reasonable suspicion or probable

_____

[3]Terry also permits an officer to conduct a frisk for weapons if the officer believes that the suspect may be armed.  392 U.S. at 31.  However, the frisk is a limited search which cannot be used as a means to obtain evidence.

cause, and the District Court's ruling would be in error.[4]

We begin by defining the term "seizure" when used in the context of the Fourth Amendment. In the seminal Terry case, the Supreme Court explained that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." 392 U.S. at 19 n.16. More recently, the Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority. See California v. Hodari D., 499 U.S. 621, 626-28 (1991); see also Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002) (noting that "a seizure occurs whenever an officer restrains the freedom of a person to walk away") (internal citations and quotations omitted). Thus, although even a brief investigatory stop is considered a "seizure," not every encounter between the police and a citizen constitutes a seizure within the meaning of the Fourth Amendment. See Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003). As we have noted before, "consensual encounters are important tools of law enforcement and need not be based on any suspicion of wrongdoing." Id. (citing Florida v. Bostwick, 501

---

[4]We frame our analysis in this manner to address the basis of the District Court's ruling that the police's "approach[] of the van [did] not constitute a legitimate stop." In so ruling, the District Court cited to the Supreme Court's decision in Adams v. Williams, 407 U.S. 143 (1972), for the proposition that "a police officer who approached an individual sitting in [a] parked vehicle based on an informant's tip was not justified, because a stop requires specific facts that reasonably lead the police officer to conclude that the individual is engaged in criminal activity." In fact, Adams v. Williams held that the police did have reasonable suspicion, based on an informant's tip, to approach and stop the defendant who was sitting in his car at 2:15 AM in a high crime area. 407 U.S. at 147. We also note that the precise page cited from Adams v. Williams by the District Court, 407 U.S. at 158, is part of the dissenting opinion. In any event, Adams v. Williams has no bearing on this case as it does not resolve whether the police "stopped" or "seized" Williams when they approached the parked van.

-8-

U.S. 429, 434 (1991)).

The District Court clearly erred when it held that the police lacked reasonable suspicion to approach the van. Before even addressing whether the police had reasonable suspicion to approach the van, the District Court should have inquired into whether Williams had been "seized" by the police. We conclude that there was no seizure because there was no use of physical force, nor was there any show of authority when the police approached the van in their marked cruiser, exited their vehicle, and approached the parked van on foot. As the Supreme Court has noted, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Bostwick, 501 U.S. at 434 ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions."). The Fourth Amendment is simply not implicated by the police approaching the parked van, contrary to the District Court's ruling.

Thereafter, as the police approached the van on foot, they noticed in plain and open view from a distance of twelve or thirteen feet such activities that created at least a reasonable suspicion that criminal activity was taking place. In particular, Officer Cornelius saw Williams holding a large ziplock bag with a green leafy substance appearing to be marijuana, as well as several smaller ziplock bags in his lap.[5] When Williams noticed the officers

_____

[5]At oral argument, counsel for Defendant argued that Officer Cornelius had no reason to conclude that the green leafy substance being bagged in the rear of the van was marijuana, and that it could have been oregano, basil, or even spinach. Whether oregano, basil, or spinach are the types of products that are routinely bagged in the rear of a van on the Virgin Islands is a determination we are not required to make. Under Terry v. Ohio and its progeny, Officer Cornelius could rely on his skill and experience in concluding that the green, leafy substance was marijuana, and in our view this was sufficient to support reasonable

approaching, he attempted to discard all the bags in his lap and hands. At this point, the fact of Williams discarding the bags containing a green leafy substance appearing to be marijuana was sufficient to transform reasonable suspicion into probable cause, and the officers thus had justification to conduct a search of the van and arrest Williams. See United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) ("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if probable cause exists to believe it contains contraband.").[6]

Williams makes several attempts to salvage the District Court's suppression order, all without merit. First, he argues that the police did in fact engage in a "show of authority" when they approached the van because they were wearing "quasi-military police uniform[s]." This argument is unconvincing. As the Supreme Court has noted, whether an officer is wearing a uniform has "little weight in the analysis" because "[o]fficers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort." Drayton, 536 U.S. at 204.

_____

suspicion. See United States v. Robertson, 305 F.3d 164, 168 (3d Cir. 2002) (noting that the officer's skill and experience were "indispensable to evaluation of reasonable suspicion").

[6]We note that the officers did not state that they believed they had probable cause as they approached the van. However, this does not preclude our finding that probable cause nonetheless existed as a matter of law. An analysis of Fourth Amendment issues involves "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." United States v. Johnson, 63 F.3d 242, 246 (3d Cir. 1995) (quoting Maryland v. Macon, 472 U.S. 463, 470-71 (1985)). "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action so long as the circumstances, viewed objectively, justify that action." Id. (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Moreover, in this case, the record indicates that Williams did not even notice the officers approaching the van in their "quasi-military police uniforms," until after Officer Cornelius saw the green leafy substance, at which point the officers already had reasonable suspicion that justified a show of authority. Williams cannot persuasively claim that he submitted to a show of authority when he did not even see the officers approach.

Second, Williams argues that the police's approach constituted a seizure because he had a heightened expectation of privacy in the van. This argument is without merit. The fact that Williams was seated within the van, rather than standing on the street, is irrelevant in this matter. It is well-established that police officers who lack reasonable suspicion may approach and question people seated in vehicles in public places. See, e.g., Johnson, 332 F.3d at 206 (holding that police officers did not "stop" defendant sitting in car until a few seconds into the encounter when it became clear that defendant was not free to go); United States v. Hendricks, 319 F.3d 993, 999 (7th Cir. 2003) (finding no seizure where officer approached a vehicle parked at gas station); see also 4 Wayne R. LaFave, Search and Seizure § 9.3(a), at 96-97 (3d ed. 1996) ("[I]f an officer merely walks up to a person standing or sitting in a public place (or, indeed who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure."). Here, the van was parked in a public place with the rear doors open. The police could approach the parked van without any reasonable suspicion, just as they could approach an individual standing on the street without any reasonable suspicion. Merely approaching an individual, whether standing or in an automobile, does not constitute a seizure under the Fourth Amendment.[7]

_____

[7]Williams argues that suppression was appropriate because there was no evidence that the marijuana belonged to him. This argument need not be addressed by this Court because it is not relevant to determining whether the police conducted an unlawful seizure, although it may be raised in a relevancy motion to the District Court or before a jury should the matter go to trial.

B.     Second Arrest

Williams cross-appeals from the District Court's denial of his motion to suppress with respect to his arrest of January 29, 2004.  However, as the United States argues, we lack jurisdiction to hear Williams' interlocutory cross-appeal.

It is well-settled that a criminal defendant may not file an immediate appeal of an order denying a pretrial motion to suppress evidence.  See Di Bella v. United States, 369 U.S. 121, 131 (1962) ("Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train."); Carroll v. United States, 354 U.S. 394 (1957); see also United States v. Jones, 994 F.2d 1051, 1054 n.4 (3d Cir. 1993).  Indeed, we have previously held that an order denying a motion to suppress evidence is "interlocutory" and "if error has been committed, it may be rectified [only] on appeal from the final judgment."  See United States v. Johnson, 690 F.2d 60, 62 (3d Cir. 1982) (citations omitted).  Although an order granting suppression of evidence is not considered a final order, the United States is specifically permitted by 18 U.S.C. § 3731 to bring an interlocutory appeal.[8]  Section 3731 affords no such right to criminal defendants.

Despite the clear import of the case law, Williams nonetheless seeks to get around the bar on interlocutory appeal by

_____

[8]The relevant portion of 18 U.S.C. § 3731 states:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

relying on the collateral order doctrine, an argument which we must reject.[9]  The Supreme Court, on numerous occasions, has emphasized the narrowness of the collateral order doctrine in the criminal context.  See Cobbledick v. United States, 309 U.S. 323, 325 (1940) (noting that the policies underlying the finality rule are "especially compelling in the administration of criminal justice"); Carroll, 354 U.S. at 403 (noting that while "certain orders relating to a criminal case may be . . . appealable[,] [t]he instances in criminal cases are very few").[10]  Our Court has also noted the heightened interest in the idea of finality in the criminal context. We have, for example, observed that "[i]n the context of a criminal case, the collateral order doctrine is used sparingly because of the need to effectively and efficiently conclude criminal proceedings, without piecemeal interruptions." Gov't of V.I. v. Rivera, 333 F.3d 143, 150 n.16 (3d Cir. 2003); see also United States v. Fiumara, 605 F.2d 116, 118 (3d Cir. 1979) (noting that "[t]he collateral order doctrine has been applied, though sparingly, in the criminal context" but that "the rule of finality has particular force in criminal prosecutions because encouragement of delay is fatal to the vindication of the criminal law") (quoting United States v.

---

[9]Under the collateral order doctrine, "a district court order entered prior to final judgment is immediately appealable if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." United States v. McDade, 28 F.3d 283, 288 (3d Cir. 1994).

[10]The Supreme Court's views have been influenced by the fact that "[p]romptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded." Flanagan v. United States, 465 U.S. 259, 264 (1984).  Other reasons for the narrowness of the collateral order doctrine in the criminal context lie in the Sixth Amendment guarantee of a speedy trial and the corresponding "societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." Id. (quoting Barker v. Wingo, 407 U.S. 514, 519 (1972)).

-13-

MacDonald, 435 U.S. 850, 854 (1978)).

In light of the foregoing concerns, courts have consistently ruled that a pretrial ruling on a suppression motion is not a collateral order under 28 U.S.C. § 1291 because the motion "presents an issue that is involved in and will be part of a criminal prosecution in process at the time the order is issued." See DiBella v. United States, 369 U.S. 121, 127 (1962); see also United States v. McDade, 28 F.3d 283, 302 (3d Cir. 1994) (noting that it is "settled that a ruling on the admissibility of evidence at a criminal trial is not completely separate from the merits of the case"). We see no reason to depart from long-standing practice in order to exercise jurisdiction over Williams' cross-appeal under the collateral order doctrine.

Finally, Williams relies on the following state court decisions for the proposition that we have "inherent jurisdiction" over the cross-appeal: Commonwealth v. Barnes, 452 A.2d 1355 (Pa. Super. Ct. 1982), abrogated by Commonwealth v. Slaton, 556 A.2d 1343 (Pa. Super. Ct. 1989); Lopez v. State, 638 So.2d 931 (Fla. 1994); and State of Wisconsin v. Thiel, 491 N.W.2d 94 (Wis. Ct. App. 1992). These cases are inapposite, however, because irrespective of the practice in certain states, we must follow the well-established standards in the federal courts. Accordingly, Williams must await for a final judgment in this matter before he may appeal the District Court's denial of the suppression order with regards to the Second Arrest.

## III.

For the foregoing reasons, we will reverse the order of the District Court in matter No. 04-2807 suppressing evidence seized in connection with the August 27, 2003 arrest and remand for further proceedings. With regards to the District Court's order relating to the January 29, 2004 arrest in matter No. 04-2903, we will dismiss the cross-appeal for want of jurisdiction.

-14-