

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-15-2006

# USA v. Williams

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4768

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Williams" (2006). *2006 Decisions*. Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4768

———

UNITED STATES OF AMERICA

v.

WILLIE A. WILLIAMS,

Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 04-cr-00170)

District Judge: Honorable James F. McClure

———

Submitted Under Third Circuit LAR 34.1(a),
September 11, 2006

Before: FUENTES, FISHER, and BRIGHT,[*] Circuit Judges.

(Filed: November 15, 2006)

---

[*] The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

FUENTES, <u>Circuit Judge</u>.

On May 13, 2004, a federal grand jury sitting in Williamsport, Pennsylvania returned a three-count indictment charging Willie A. Williams with possession and intent to distribute five grams or more of crack cocaine; possession of a firearm in furtherance of a drug trafficking crime; and possession of a firearm by a career criminal, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii); 18 U.S.C. § 924(c)(1); and 18 U.S.C. §§ 924(a)(2), 924(e)(1), and 922(g), respectively. Williams pleaded guilty to one count of possession with intent to distribute and the government dropped the remaining counts. He now appeals (1) the District Court's denial of his suppression motion; and (2) his sentence, pursuant to <u>U.S. v. Booker</u>, 543 U.S. 220 (2005).

I.

Because we write primarily for the parties, who are familiar with the facts and procedural history, we will only recite them as our analysis requires. Briefly, on the morning of July 13, 2003, Williamsport Police Officers Damon Hagan and James Douglas were traveling in an unmarked car on High Street, near Hepburn Street, in Williamsport. Officer Hagan was driving. The time was just past four in the morning, in an area known for crime and drug trafficking. As Hagan approached Hepburn Street, he observed in the rearview mirror a vehicle coming to a stop and parking along the southern

2

curb of High Street.  He did not observe any parking or moving violation.  Hagan decided to quickly return to where the car had parked, to determine who the driver had been.  As he approached, Hagan observed an individual crossing the street a few feet away from the driver's side door (he had not seen anyone exit the car).  Hagan then pulled his car up to approach the individual.  With his passenger side window down, Hagan recognized the individual as Willie Williams, who he had encountered several times previously.  Based on these prior encounters, Hagan suspected that Williams had been driving the car with a suspended license.  He immediately told Williams to "stop."

What happened next has been the subject of some dispute.  At a suppression hearing, held on November 2 and 9, 2004, the District Court heard testimony and reviewed a video tape shot from a patrol car that arrived on the scene shortly after Hagan told Williams to "stop."  In its December 10, 2004 opinion and order, the District Court reasoned that the staleness of the information relied on by the police about Williams's license suspension, combined with circumstances that night (neither officer had seen Williams driving, for example), did not provide reasonable suspicion for a Terry stop.  The Court therefore suppressed evidence seized during the search, including a loaded Beretta .25 caliber semiautomatic firearm, which police found on the ground near Williams, and 6.4 grams of crack cocaine, which police later discovered on Williams's person.

Subsequently, however, on March 22, 2005, the District Court granted the government's motion for reconsideration of the suppression order.  The District Court

3

found, after a second, closer look at the video and testimony, that Williams did not initially submit to Hagan's show of authority and therefore was not "seized" when Hagan first told him to "stop." The District Court found that after Hagan told Williams to "stop," Williams took several steps, walking toward a house at 310/312 High Street. Williams eventually stopped somewhat north of the curb, and then Hagan approached him there. According to the District Court, "[i]n the video, Williams is standing on the grass located north of the northern curb of High Street, and approximately one step south of the sidewalk. [A] weapon was approximately three to five feet to Williams's southeast, and lay in the grass between the sidewalk and the northern curb, but close to the curb." Appellant's Appendix ("App. Appx.") at 62.

The District Court found, further, that

> After the officers surrounded Williams, Officer Hagan patted down Williams to ensure he did not possess any weapons, and found none. Williams then gave Officer Hagan the name of his parole agent in Philadelphia. Officer Hagan contacted the agent via Lycoming County Communications and the Williamsport office of the state parole board. Parole Agent DeLullo requested Officer Hagan take Williams into custody based on his representation that he would issue a 48-hour parole violation detainer. By that time, the officers had confirmed that Williams had a suspended license and the officers had found the weapon lying within feet of Williams. Upon his custodial arrest, Officer Hagan then searched Williams and discovered in his left front pants pocket $732 in currency, together with a zip-lock bag containing 40 smaller bags of suspected crack cocaine. In Williams' right front pants pocket, Officer Hagan discovered a larger bag of suspected cocaine.

App. Appx. at 63 (citation omitted). According to the District Court, Williams was not "seized" for Fourth Amendment purposes until the point when the video shows him

4

surrounded by four police officers; and that by this point, the officers had reasonable suspicion based on a combination of factors (discussed in detail, below).

On July 7, 2005, Williams entered a conditional guilty plea to one count of possession with intent to distribute crack cocaine. He reserved the right to appeal the District Court's denial of the suppression motion. The government dismissed the remainder of the charges in the indictment, including the weapons charges. At the sentencing stage, Williams objected to the presentence report's enhancement of his offense level for possession of a weapon. On October 21, 2005, when Williams appeared for sentencing, the District Court overruled this objection. The Court sentenced Williams to 110 months' imprisonment, four years supervised release, and a $100 special assessment. This appeal followed.

## II.

Williams challenges, first, the District Court's denial of his motion to suppress the gun and drugs evidence found the night of his arrest.[1] The central issue, here, is whether Williams had been seized within the meaning of the Fourth Amendment when Hagan first approached and told him to "stop." If Williams was not "seized" by the police until after (1) they approached him, (2) he retreated, and (3) they saw the gun on the ground, then

---

[1] "We review *de novo* the District Court's determination of reasonable suspicion and probable cause, as well as its determination regarding whether Williams was seized for purposes of the Fourth Amendment." United States v. Williams, 413 F.3d 347, 351 (3d Cir. 2005) (citations omitted). "In our *de novo* review, however, we accept findings of fact made by the District Court unless clearly erroneous." Id.

5

the police had reasonable suspicion to seize Williams and the District Court correctly denied the suppression motion.

We begin by defining the term "seizure" when used in the context of the Fourth Amendment. "In the seminal Terry case, the Supreme Court explained that a seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." U.S. v. Williams, 413 F.3d 347, 352 (3d Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). "More recently, the Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority." Id. at 352 (citing California v. Hodari D., 499 U.S. 621, 626-28 (1991) and Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)). "Attempted seizures of a person are beyond the scope of the Fourth Amendment." United States v. Valentine 232 F.3d 350, 358 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 n. 7 (1998)) (internal quotation marks omitted).

Here, before addressing whether the police had reasonable suspicion to approach Williams, the District Court properly inquired into whether Williams had been "seized" by the police. Compare Williams, 413 F.3d at 352 ("[T]he District Court should have inquired into whether Williams had been 'seized' by the police."). We conclude that there was no seizure when the police told Williams to "stop." The District Court found that Williams did not immediately stop when ordered to do so by the police; Williams concedes as much. Even if Williams contested that he moved, the District Court's finding

6

is not clearly erroneous because it is properly based on the testimony and video evidence cited in the Court's opinion. Under Hodari D and its progeny, therefore, at the time the police seized the gun, Williams's person had not yet been seized. The police had not applied physical force, nor had Williams submitted to a police show of authority.

We agree with the District Court that by the time the police did seize Williams, they had reasonable suspicion for a Terry stop, based on Williams's actions, the neighborhood and time of day, and, most of all, the presence of what appeared to be a recently dropped gun on the path that Williams had been walking.[2] The later discovery by police of the drugs and money on Williams's person therefore arose out of a custodial arrest that was legal in light of the officers' discovery of the weapon; a preliminary computer check of Williams's driver's record; a discussion with Williams's parole agent; and the parole agent's request that the officers bring Williams in because a detainer would be issued.

We will affirm the District Court's dismissal of Williams's suppression motion and affirm the District Court's grant of the government's motion for reconsideration, for all of the reasons above.[3]

---

[2] The District Court credited the officers' testimony that they had found the gun lying in dew-covered grass and that the gun was not itself covered in dew, suggesting that the gun had been dropped there shortly before police found it.

[3] We need not review the District Court's conclusion (not retracted on reconsideration) that the officers lacked reasonable suspicion to stop Williams, prior to their discovery of the gun.

III.

The second issue that Williams raises on appeal is whether the District Court erred under <u>Booker</u> by engaging in judicial fact finding regarding Williams's possession of a firearm in connection with drug trafficking.[4] Williams does not otherwise challenge the reasonableness of his sentence. There is no dispute that the District Court was aware of its discretion post-<u>Booker</u>.

<u>Booker</u> held that where application of the Sentencing Guidelines is mandatory, judicial fact-finding by a preponderance of the evidence violates a defendant's right to a jury trial. <u>Booker</u>, 543 U.S. at 233 (citation omitted). Thus, this Court has held that because the guidelines are now advisory, <u>Booker</u> left the existing system of fact-finding by a preponderance of the evidence undisturbed. <u>See</u> <u>United States v. Miller</u>, 417 F.3d 358, 362-63 (3d Cir. 2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.") (citing <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005)).

At sentencing in this case, the District Court heard argument on, and then overruled, Williams's objection to a two level enhancement of his offense level for

---

[4] "We exercise plenary review over a district court's legal interpretation of the Sentencing Guidelines, but our review of the factual findings supporting a district court's application of the Guidelines is only for clear error." <u>United States v. Irvin</u>, 369 F.3d 284, 286 (3d Cir. 2004).

possession of a weapon in connection with Williams's drug offense. Williams argued before the District Court, and argues on appeal, that because the gun had not been found on his person; because he never admitted to possessing it; and because no fingerprints were taken from the gun, there was insufficient proof that he had possessed the gun. However, because the District Court made its factual findings at sentencing after hearing evidence of the gun's proximity to Williams and evidence that it had been dropped recently (it was not, like the grass around it, covered in dew), the Court's finding that Williams had possessed the gun prior to his arrest was not clearly erroneous.[5] For this reason, we will affirm Williams's sentence.

IV.

We have considered all of the remaining arguments advanced by Williams and conclude that they are without merit. Accordingly, we will affirm the District Court's grant of the government's motion for reconsideration; denial of Williams's motion for suppression; and Williams's sentence.

---

[5] Williams's sentence of 110 months' imprisonment, moreover, is well within the statutory maximum of forty years, under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii). See, e.g., United States v. Pennavaria, 445 F.3d 720, 723-724 (3d. Cir. 2006) ("Pennavaria also had fair warning that his sentence could be enhanced based on judge-found facts as long as the sentence did not exceed the statutory maximum.").