NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-3974 & 11-1006
_____

UNITED STATES OF AMERICA,

Appellant at No. 10-3974

v.

JOSEPH W. NAGLE
_____


IN RE:  UNITED STATES OF AMERICA,

Petitioner at No. 11-1066
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania;
On Petition for a Writ of Prohibition or Mandamus to the
United States District Court for the Middle District of Pennsylvania
D.C. Criminal No. 09-cr-00384-001
(Honorable Sylvia H. Rambo)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 26, 2011

Before:  McKEE, *Chief Judge*, SCIRICA and RENDELL, *Circuit Judges*.

(Filed : August 17, 2011)

_____

OPINION OF THE COURT
_____

SCIRICA*, Circuit Judge*.

Joseph W. Nagle was charged with defrauding the United States Department of Transportation (USDOT) by falsely portraying his business, Schuylkill Products, Inc. (SPI), as subcontracting work to a Disadvantaged Business Enterprise (DBE). The District Court granted Nagle's motion to compel his uncle and co-owner, Ernest G. Fink, Jr., to testify and conferred judicial immunity upon Fink's testimony. The government immediately appealed the court's immunity order and filed a Petition for Writ of Prohibition or Mandamus to prohibit the court from enforcing its order conferring judicial immunity on Fink. We will dismiss the government's interlocutory appeal for lack of jurisdiction and deny the government's Petition.

I.

For about thirty years, Fink and his brother-in-law, Gordon Nagle, were co-owners of SPI, a closely held company that manufactured concrete beams primarily used for highway construction. Between 1984 and 2002, Gordon's son, Joseph, held various managerial positions within the company. When Gordon Nagle died in 2004, Joseph became CEO, President, director, and majority-owner of SPI, owning just over half of SPI shares. Fink had worked for SPI since 1970. By 2004, he was Vice President and COO of SPI and owned the remaining shares of the company. In 2009, Nagle and Fink sold SPI to Northeast Prestressed Products, LLC. SPI no longer operates.

Federal statutes and regulations require USDOT to ensure at least 10% of funds authorized for various construction projects be expended with DBEs. *See* Surface Transportation Assistance Act of 1982, Pub. L. No. 97-424, § 105(f), 96 Stat. 2097

2

(1983).[1] DBE funds may be awarded (1) directly to DBEs; (2) to general contractors who subcontract work directly to DBEs; or (3) to general contractors who subcontract work to companies who, in turn, subcontract work to DBEs. SPI was not certified as a DBE.

The government alleges Fink (between 1992 and 2008) and Nagle (between 2004 and 2008), along with co-conspirators, set up a front company, the Marikina Construction Corporation (MCC), that "did not perform a commercially useful function." Fink and Nagle had MCC certified as a DBE to which SPI "subcontracted" work. They then represented SPI as a vehicle by which general contractors subcontracting work to SPI could obtain federal funds earmarked for projects involving DBE subcontractors. By representing the front company as a DBE that could earn general contractors millions of dollars in DBE credits, the government alleges Fink and Nagle "fraudulently obtain[ed]" subcontracting work for SPI on hundreds of projects.

In a thirty-two count indictment, Nagle and Fink were charged with (1) conspiracy to defraud USDOT in the implementation, execution, and administration of its DBE program and to commit wire and mail fraud in violation of 18 U.S.C. § 371; (2) wire fraud in violation of 18 U.S.C. § 1343; (3) mail fraud in violation of 18 U.S.C. § 1341; (4) conspiracy to commit unlawful monetary transactions in violation of 18 U.S.C. §

---

[1] 49 C.F.R. § 26.5 defines a DBE as "a for-profit small business concern—(1) That is at least 51 percent owned by one or more individuals who are both socially and economically disadvantaged or, in the case of a corporation, in which 51 percent of the stock is owned by one or more such individuals; and (2) Whose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it." For purposes of this regulation, "socially and

1956(h); (5) engaging in monetary transactions in criminally derived property of a value greater than $10,000, in violation of 18 U.S.C. § 1957; and (6) asset forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982, and 28 U.S.C. § 2461. Fink pleaded guilty to conspiracy to defraud USDOT, and the government dismissed the remaining charges against him.

Nagle contends Fink excluded him from the day-to-day operation of the company, and that he did not learn of any conspiracy until late 2007. At trial, Nagle wanted to call Fink to testify that Nagle "was unwanted, unwelcomed, and excluded" in SPI's operations, did not knowingly join any conspiracy being perpetrated by Fink and co-conspirators, and even tried to end any fraudulent activities and fire employees engaging in illegal behavior. Nagle subpoenaed Fink, and Fink replied he would invoke his Fifth Amendment privilege against self-incrimination rather than testify. The government denied Nagle's request that Fink be conferred "use immunity" under 18 U.S.C. § 6002, on the grounds it did not know what Fink would say and did not want to grant him an "immunity bath" for any crimes he may have committed.

Nagle then filed a motion to compel Fink's compliance with the subpoena. On October 4, 2010, the District Court granted Nagle's motion and ordered Fink's "testimony [to] be given under the protection of judicial immunity from prosecution." The government immediately filed an interlocutory appeal regarding the immunity order, and the court stayed Nagle's trial pending resolution of the appeal. On December 30,

---

economically disadvantaged" individuals may include a variety of racial and ethnic minorities, as well as women. *See* 15 U.S.C. § 637(d).

2010, the government filed a Petition for Writ of Prohibition or Mandamus that would prohibit the court from enforcing its order conferring judicial immunity on Fink.[2, 3]

## II.

Nagle contends we do not have jurisdiction over the government's interlocutory appeal. We do not usually have jurisdiction over interlocutory appeals because 28 U.S.C. § 1291 limits our jurisdiction to "final decisions of the district court[]" that "end[] the litigation on the merits and leave[] nothing for the court to do but execute judgment." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (internal quotations marks omitted). Moreover, the government does not argue any statute has conferred jurisdiction upon this court to hear this particular appeal. Rather, the government relies upon the collateral order doctrine. This doctrine

> considers as final judgments, even though they do not end the litigation on the merits, decisions which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated. To fall within the limited class of final collateral orders, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.

---

[2] While Writs of Prohibition and Writs of Mandamus are "somewhat different," *United States v. Santtini*, 963 F.2d 585, 593 (3d Cir. 1992), "modern courts have shown little concern for the technical and historical difference between the two writs," *id.* (internal quotation marks omitted). Therefore, the government "need not precisely state which writ [it] seeks." *Id.*

[3] On February 17, 2011, this Court ordered the government's appeal referred to the panel hearing the government's Petition.

*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (citations and internal quotation marks omitted). We interpret the collateral order doctrine "with the utmost strictness in criminal cases," *id.* at 799, "because of the need to effectively and efficiently conclude criminal proceedings, without piecemeal interruptions," *United States v. Williams*, 413 F.3d 347, 355 (3d Cir. 2005) (internal quotation marks omitted).

Nagle contends the court's immunity order did not "resolve an . . . issue completely separate from the merits." We confronted a similar issue in *United States v. Santtini*, 963 F.2d 585 (3d Cir. 1992). In that case, the district court ordered law enforcement agents to refrain from arresting a co-conspirator if he arrived at a deposition sought by defendants. We concluded we did not have jurisdiction to hear the government's interlocutory appeal of the court's order because "the propriety of an order which rests on a decision that a witness is central to the defense is not one which is completely separate from the underlying merits of the case." 963 F.2d at 592 (internal quotation marks omitted).

The government attempts to distinguish *Santtini* on the ground that the protected individual in that case claimed an ability to exonerate the defendants. Not only does Fink not wish to testify, but no one knows the content of his testimony, nor whether it will exculpate Nagle. However, we did not find in *Santtini* that the protected individual's testimony would exonerate the defendants. Rather, there—as is the case here—the district court ordered immunity because it concluded the protected individual's testimony was

6

central to the defense. This decision is not "completely separate from the merits of the action," and is not subject to interlocutory appeal.

## III.

The government also filed a Petition for Writ of Prohibition or Mandamus that would prohibit the District Court from enforcing its order conferring immunity pursuant to its inherent authority. The federal appellate courts have power under the All Writs Act, 28 U.S.C. § 1651, to issue these writs "in exceptional cases where the traditional bases for jurisdiction do not apply." *In re Pasquarello*, 16 F.3d 525, 528 (3d Cir. 1994). For these writs to issue, the government must show "a right to the writ that is clear and indisputable," *In re Briscoe*, 448 F.3d 201, 212 (3d Cir. 2006) (internal quotation marks omitted), by demonstrating the district court committed a "clear abuse of discretion" or a "clear error of law," *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994) (internal quotation marks omitted). Moreover, "appeals by the Government in criminal cases are something unusual, exceptional, not favored, at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition. . . . Mandamus . . . may never be employed as a substitute for appeal in derogation of these clear policies." *Will v. United States*, 389 U.S. 90, 96-97 (1967).

In relying on the standard set forth in *Government of the Virgin Islands v. Smith*, 615 F.2d 964, 969-74 (3d Cir. 1980), to determine it possessed inherent authority to confer judicial immunity upon Fink, the District Court neither committed clear legal error nor clearly abused its discretion. Because the government cannot satisfy its burden of

demonstrating a "clear and indisputable" right to either writ, such extraordinary relief is not appropriate in these circumstances.

IV.

For the foregoing reasons, we will dismiss the government's interlocutory appeal and deny its Petition for Writ of Prohibition or Mandamus.