**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2980

_____

UNITED STATES OF AMERICA

v.

LAQUAN WILLIAMS,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2:21-cr-00384-001)
District Judge:  Honorable William S. Stickman, IV

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*.

(Opinion filed: January 15, 2025)

_____

OPINION*

_____


MONTGOMERY-REEVES, *Circuit Judge*.

LaQuan Williams appeals from his judgment of conviction, arguing that the

District Court erred in denying his motion to suppress certain evidence.  According to

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Williams, the evidence resulted from an illegal seizure in violation of the Fourth Amendment. We disagree and will affirm the District Court's judgment.

## I. BACKGROUND

In July 2020, a Pennsylvania State Police Trooper was on routine patrol alone in an area where there had been a high volume of drug and other criminal activity in recent weeks. The Trooper pulled into a hotel's parking lot, checked the back area, and returned to the front. As the Trooper was leaving the lot, the Trooper observed a parked car with the driver's side door open. The Trooper stopped his patrol vehicle and rolled down the driver's window. The car's driver, Williams, then began to drive towards the Trooper's patrol vehicle. These events happened within seconds of each other.

As Williams's car moved forward, the Trooper's headlights illuminated Williams's windshield, and the Trooper observed a roughly 12-inch-high by 12-inch-wide crack on the windshield. The Trooper did not activate his police lights or siren, display a badge or weapon, speak to Williams, or direct him to stop. The Trooper's hand was sticking out of his window, but not in a manner directing Williams to stop. The Trooper's patrol vehicle was not blocking Williams's path. Williams stopped parallel to and approximately four feet from the Trooper's patrol vehicle and rolled down his window. The Trooper questioned Williams about the cracked windshield. When Williams responded, the Trooper observed Williams's bloodshot, glassy eyes and mumbled response.

The Trooper got out of his vehicle to hear Williams better and immediately detected the smell of marijuana coming from Williams's car. The Trooper also noticed

2

that Williams's pupils were dilated, his hands were shaking, and he was taking short, slow breaths. The Trooper explained that it was a violation to have a cracked windshield within the driver's eyesight and asked for Williams's license, registration, and insurance. Williams responded by giving the Trooper a bag of marijuana. The Trooper then asked Williams to step out of the vehicle. The entire exchange lasted less than 90 seconds.

Shortly after this exchange, the Trooper called for backup. When backup arrived, officers searched Williams's vehicle and discovered 459 bags of fentanyl. Williams was arrested and charged with possession with intent to distribute under 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Williams filed a Motion to Suppress Physical Evidence and Statements (the "Motion to Suppress"), seeking to exclude "[a]ll of the contraband recovered in [Williams's] case and all statements made by [Williams because they] were the direct result of [an] initial unlawful detention . . . ." App 39. The District Court held a suppression hearing and considered post-hearing briefs from the parties. The District Court issued a Memorandum Opinion and Order denying Williams's Motion to Suppress because "[the Trooper's] initial contact with Williams was a mere encounter that did not implicate the Fourth Amendment." App. 16.

Williams subsequently pleaded guilty, and this appeal followed.

3

## II. DISCUSSION[1]

In this appeal we consider one issue: whether the District Court erred in denying Williams's Motion to Suppress. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over questions of law." *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023). Williams challenges both the District Court's factual finding that the Trooper did not signal Williams to stop and its legal conclusions that the initial interaction was a mere encounter and that there was a reasonable suspicion when Williams was eventually seized. We address each argument in turn.

### A. The District Court Did Not Err by Finding the Officer Did Not Gesture Williams to Stop

First, Williams contends that the District Court incorrectly concluded that the Trooper's hand out the window did not direct Williams to stop his vehicle. Rather, Williams argues this was a gesture intended to command him to stop his vehicle and, thus, he was seized.

When analyzing factual determinations made after accepting evidence in a motion to suppress hearing, we apply the clearly erroneous standard of review. *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012). A finding is "'clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States*

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

*v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Accordingly, 'if the district court's account of the evidence is plausible in light of the record viewed in its entirety,' we will not reverse it even if, as the trier of fact, we would have weighed the evidence differently." *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (alteration omitted) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)). "When findings are based on determinations regarding the credibility of witnesses, [we must give] even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on [witness testimony]." *Anderson*, 470 U.S. at 575.

The District Court based its factual finding in part on the hotel's security camera video. The video shows the Trooper placing his hand out the window, but he makes no gestures that would indicate Williams should stop. Thus, review of that video evidence shows it plausibly supports the District Court's interpretation that the Trooper placing his hand outside the vehicle was not an indication for Williams to stop. The District Court also used the Trooper's witness testimony at the suppression hearing to reach this factual finding. The Trooper's testimony that he made no signal for Williams to stop—which the District Court found credible—also plausibly supports the District Court's factual finding that the Trooper was not signaling Williams to stop when he put his hand out the vehicle window.

Because the record plausibly supports the District Court's factual finding, *Price*, 558 F.3d at 277, and we are not "left with the definite and firm conviction that a mistake

5

has been committed," *Pelullo*, 173 F.3d at 135, we hold that the District Court's factual finding is not clearly erroneous.

### B. Williams's Initial Interaction with the Trooper Was a "Mere Encounter"

Williams next asserts that the District Court erred in holding that his initial interaction with the Trooper was a mere encounter. According to Williams, the Trooper illegally seized him, in violation of the Fourth Amendment, by putting his hand out of the patrol vehicle's window while Williams was driving toward the Trooper.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. AMEND. IV. "Police encounters with citizens fall into one of three broad categories, each with varying degrees of constitutional scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.'" *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (quoting *United States v. Perez,* 443 F.3d 772, 777 (11th Cir. 2006)). "The first type of encounter does not implicate the Fourth Amendment." *Id*. "The second category (i.e., brief seizures or *Terry* stops) requires a showing that the officer acted with reasonable suspicion." *Id*. "And the third category (i.e., full-scale arrests) is proper only when an officer has probable cause." *Id*.

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "We apply an objective test when evaluating whether an officer's 'show of authority' would have led a reasonable person to

believe they were not free to leave." *Brown*, 765 F.3d at 289. "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Other factors include middle of the night interactions, use of police lights or sirens, commands to stop or show hands, or repeated commands. *See United States v. Amos*, 88 F.4th 446, 452 (3d Cir. 2023) (using police interaction around 2:00 a.m., command to stop and show hands, and use of police lights as factors in determining that a show of authority occurred); *United States v. Lowe*, 791 F.3d 424, 431 (3d Cir. 2015) ("[W]e held that an objective person would only reasonably not have felt free to decline the interaction after the officer *repeated* his motion, and we thus concluded that . . . the repetition of the motion was the 'show of authority.'" (internal citation omitted)). But "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555.

Here, the Trooper's actions do not amount to a show of authority. The Trooper was the only officer present at the time; he did not display his badge or weapon; he did not touch Williams; he did not verbally command Williams to stop, roll down his window, or show his hands; he did not use his police lights or sirens; he did not block Williams's path; and the interaction was not late at night. The only fact Williams points to in support of a show of authority is that the Trooper "moved his left arm from inside

7

the vehicle, through the window and outside, directly into Mr. Williams's line of sight."[2] Opening Br. 17. But a reasonable person, who simply saw a police officer's arm hanging out of a patrol vehicle window without anything more, would have felt free to leave. *Brown*, 765 F.3d at 289; *Mendenhall*, 446 U.S. at 554.

Accordingly, we hold that the Trooper did not make a show of authority that would have led a reasonable person to believe they were not free to leave, and Williams's initial interaction with the Trooper was a mere encounter that did not implicate the Fourth Amendment.

### C. The Trooper's Eventual Seizure of Williams Was Supported by a Reasonable Suspicion

Finally, Williams argues that the District Court erred in holding that the Trooper had a reasonable suspicion to support the eventual seizure. According to Williams, after his initial encounter with the Trooper had ripened into an investigatory seizure, the Trooper did not have a reasonable suspicion of criminal activity occurring.

As discussed above, the Fourth Amendment prohibits "unreasonable searches and seizures," U.S. CONST. AMEND. IV, and brief seizures or investigatory detentions must be supported by a reasonable suspicion of criminal activity, *Brown*, 765 F.3d at 288 (citing

---

[2] Williams cites *United States v. Lowe*, to bolster his argument, but *Lowe* is not applicable. 791 F.3d 424 (3d Cir. 2015). In *Lowe*, we held that "when a stationary suspect reacts to a show of authority by not fleeing, making no threatening movement or gesture, and remaining stationary, he has submitted under the Fourth Amendment and a seizure has been effectuated." *Id.* at 434. But this holding was made in determining "[w]*hen* [] Lowe actually submit[ted] to the show of authority," not whether a show of authority was made. *Id.* at 431 (emphasis added). Even if this holding were legally applicable, it is factually distinguishable because Williams was moving—not stationary.

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In order for a court to find that reasonable suspicion existed, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the seizure or detention]." *Terry*, 392 U.S. at 21. "[W]e must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).

Here, the Trooper points to several "specific and articulable facts" that support a reasonable suspicion. *Terry,* 392 U.S. at 21. The hotel where the Trooper and Williams's interaction took place had a recent history of drug and other criminal activity. Williams had bloodshot, glassy eyes. Williams responses to the Trooper's questions were mumbled. As the Trooper approached Williams's car, he detected the smell of marijuana.[3] And the Trooper observed that Williams's pupils were dilated, his hands were shaking, and he was taking short, shallow breaths. Finally, the Trooper had training and experience in drug investigations, impaired driving enforcement, and criminal

---

[3] Under Pennsylvania law, possessing marijuana was prohibited. 35 PA. STAT. AND CONS. ANN. § 780-113(31) (West 2014). Additionally, the Trooper did not need reasonable suspicion to approach Williams's vehicle. *See United States v. Williams*, 413 F.3d 347, 349 (3d Cir. 2005) (holding that the Fourth Amendment is not implicated by police officers simply approaching a vehicle).

interdiction.  Taken together, these facts are sufficient to show a reasonable suspicion necessary for an investigatory seizure.  *Id*.

## III.  CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.